UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILD BAINBRIDGE, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MAINLANDER SERVICES CORPORATION, an Oregon corporation; OIEN CONSTRUCTION, INC., a Washington corporation; UNITED STATES ARMY CORPS OF ENGINEERS, a federal agency, et al.,<br><br>Defendants. | CASE NO. C04-5054BHS<br><br>ORDER DENYING MOTION TO ENFORCE SETTLEMENT AGREEMENT |

This matter comes before the Court on Wild Bainbridge's Motion to Enforce Settlement Agreement (Dkt. 80). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On April 4 and Aptil 7, 2008, the parties in this matter discussed possible renewal of Mainlander Services Corporation's ("Mainlander") withdrawn offer of settlement. *See* Dkt. 81, Exh. A at 4. On April 8, 2008, Mainlander's counsel emailed Wild Bainbridge's counsel a list of settlement terms. *Id.* at 4-5. The email was apparently intended as an

ORDER - 1

1  offer of settlement and concluded with the following language: "This offer will remain
2  open for a period of 48 hours from transmittal, after which it will be withdrawn without
3  further notice. If you would like to discuss this offer or present a counter-offer, please
4  communicate that to me by return e-mail." *Id.* at 5.

   On the same day, Wild Bainbridge responded to the email. Dkt. 88-3, Exh. 2 at 1.
Wild Bainbridge indicated that it accepted the offer "with one change to the dollar
amount offered." *Id.* The text of the email included Mainlander's terms but included a
different dollar amount. The email concluded with the following language: "We would
appreciate it if you could respond to this counter-offer within 24 hours of transmittal. If
you would like to discuss this offer or present a counter-offer, please communicate that to
me by return e-mail." *Id.* Mainlander rejected Wild Bainbridge's offer by telephone on
April 8, 2008. Dkt. 88 at 2.

   On April 9, 2008, counsel for both parties spoke by telephone, and Wild
Bainbridge's counsel confirmed that Wild Bainbridge wished to make a new settlement
offer on the same terms as Mainlander's original offer but again with a different dollar
amount. *Id.* Mainlander similarly rejected this offer by telephone. *Id.* at 3.

   On April 14, 2008, Wild Bainbridge's counsel sent an email stating that Wild
Bainbridge accepted the settlement offer, asking Mainlander's counsel to "draft the
necessary papers," and indicating Wild Bainbridge's desire to "get the settlement
executed as soon as possible." Dkt. 81, Exh. B at 7. Mainlander's counsel responded by
email and indicated his desire to speak with his clients in person and to thereafter "get a
short agreement in principle that both parties accept." Dkt. 88-5, Exh. 4.

   On April 15, 2008, Mainlander's counsel emailed Wild Bainbridge's counsel "an
electronic copy of a letter confirming the agreement in principle reached yesterday." Dkt.
81, Exh. C at 9. Mainlander requested that Wild Bainbridge review the letter and
countersign and return the letter if Wild Bainbridge determined that the letter accurately
reflected the basic terms of the parties' settlement. *Id.* Upon receipt of the counter-signed

ORDER - 2

letter, counsel for Mainlander was to draft a final settlement agreement and release. *Id.* The letter is much longer and much more detailed than Mainlander's April 8, 2008, email. *See* Dkt. 81, Exh. D at 11-13.

Wild Bainbridge responded by email on April 16, 2008. Dkt. 88-7, Exh. 6. Wild Bainbridge objected to certain new terms, including limits on the way in which Wild Bainbridge would be permitted to use settlement proceeds and a confidentiality clause, identified which new terms could be included in the terms sheet, and identified which items should be excluded from the terms sheet but could be addressed upon drafting of final settlement papers. *Id.*; Dkt. 88-8, Exh. 7.

On April 17, 2008, Mainlander responded to Wild Bainbridge's April 16, 2008, emails and agreed to many of Wild Bainbridge's suggestions or objections. Dkt. 88-9, Exh. 8. With respect to the confidentiality clause, Mainlander summarized its position as follows:

> 4. Mainlander will insist on a confidentiality provision as a condition to any settlement.
> If confidentiality of the settlement is acceptable to Wild Bainbridge, then I think that we have agreement on the basic framework for a settlement. If not, then I have been instructed to proceed with the litigation. Please let me now your clients' position at your earliest convenience.

Dkt. 88-9, Exh. 8.

On April 18, 2008, the parties spoke by telephone, and Wild Bainbridge reiterated that the confidentiality provision was unacceptable. Dkt. 88 at 5. On the same day, Mainlander sent Wild Bainbridge an email and a letter reflecting the "basic terms" of the settlement. Dkt. 88-10, Exh. 9 at 1.With respect to confidentiality, Mainlander's email stated that "[w]hile the confidentiality provision still remains to be negotiated, I believe that we have an agreement in principle on the rest of the substantive terms of the settlement." *Id.* Mainlander again invited Wild Bainbridge to countersign to indicate its acceptance. *Id.* at 3.

On April 21, 2008, Wild Bainbridge responded by email, declined to sign the letter as drafted, and noted, "it looks like that issue [confidentiality] will block a settlement."

ORDER - 3

Dkt. 88-11, Exh. 10. Wild Bainbridge asked Mainlander to draft a release, and Mainlander declined to do so until it was clear that a settlement agreement was in place and therefore encouraged Wild Bainbridge to reconsider its position with respect to confidentiality. Dkt. 88-12, Exh. 11. Wild Bainbridge responded by reasserting its position and notifying Mainlander of its intent to file the instant motion. Dkt. 88-13, Exh. 12. Wild Bainbridge now moves to enforce the settlement agreement as codified in Mainlander's April 8, 2008, email. Dkt. 80.

## II. DISCUSSION

The interpretation and enforcement of settlement agreements is analyzed under principles of state law that govern contracts generally. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). One of the essential elements to contract formation is mutual assent, which often takes the form of an offer and an acceptance of that offer. *Pacific Cascade Corp. v. Nimmer*, 25 Wn. App. 552, 555-556 (1980). The intention to contract is distinct from the promise to perform:

> [G]reat care should . . . be taken not to construe the conduct, declarations, or letters of a party as proposals when they are intended only as preliminary negotiations. The question in such cases is, did the offerer mean to submit a proposition, or was he only settling the terms of an agreement on which he proposed to enter, after all its particulars are adjusted? If it is intended merely to start negotiations which may subsequently result in a contract, or is intended to call forth an offer from the one to whom it is addressed, its acceptance does not consummate a contract. The fact that the parties do intend a subsequent agreement to be made is strong evidence to show that they do not intend the previous negotiations to amount to any proposal or acceptance. An agreement, to be finally settled, must comprise all the terms which the parties intended to introduce into the agreement and until the terms of a proposal are settled, the proposer is at liberty to retire from the bargain.

*Id.* at 556-57. Under Washington law, courts consider three factors when determining whether informal writings such as letters and emails are sufficient to establish a contract where the parties contemplate the execution of a formal agreement: (1) the subject matter has been agreed upon, (2) all terms stated in the informal writings, and (3) the parties intended a binding agreement prior to execution of a formal agreement. *Morris v. Maks*, 69 Wn. App. 865, 869 (1993).

ORDER - 4

In this case, the parties' email exchanges over the course of two weeks evidence an attempt to negotiate and reach an agreement, and the parties dispute whether their efforts culminated in a contract on April 14, 2008. Mainlander's April 8, 2008, email was indisputably an offer. *See* Dkt. 81, Exh. A. By its terms, the offer expired on April 10, 2008, and Wild Bainbridge's attempt to "accept" the offer on April 14, 2008, is of no avail.

Wild Bainbridge attempts to avoid this result by contending that Mainlander's subsequent correspondence contradicts Mainlander's current position that Wild Bainbridge's attempted acceptance constitutes a counteroffer. Wild Bainbridge cites Mainlander's proposed letter in which Mainlander summarized the parties' negotiation efforts as follows: "In our e-mail correspondence of last week, I outlined a settlement proposal that was ultimately accepted by your clients yesterday." Dkt. 88-6, Exh. 5 at 2. Mainlander's use of the term "accepted" does not alter the fact that Mainlander's offer had expired by its own terms on April 10, 2008, and had terminated by operation of Wild Bainbridge's counteroffers. Moreover, despite the letter's reference to Wild Bainbridge having "accepted" Mainlander's offer, the bulk of the letter offers additional terms not included in Mainlander's offer and therefore does not deem Wild Bainbridge's correspondence to constitute an acceptance. The Court therefore concludes that Wild Bainbridge's April 14, 2008, letter professing to accept Mainlander's offer was actually a counteroffer.

Mainlander did not immediately accept Wild Bainbridge's counteroffer; rather, Mainlander's counsel indicated that he wanted to speak with his clients in person and that he hoped to "get a short agreement in principle." Dkt. 88-5, Exh. 4. Mainlander's April 15, 2008, confirmation of "the agreement in principle reached yesterday" included new terms and therefore constitutes a counteroffer. *See* Dkt. 81, Exh. C at 9. The parties' later efforts to negotiate a settlement ultimately consisted of rejections and counteroffers and did not culminate in an agreement.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Wild Bainbridge's Motion to Enforce Settlement Agreement (Dkt. 80) is **DENIED**.

DATED this 29th day of May, 2008.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 6